IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| THEMBI DLAMINI<br><br>                 Plaintiff,<br><br>v.<br><br>JUNA G. BABB and MICHAEL J. BABB,<br><br>                 Defendants. | Civil Action File No.<br><br>JURY TRIAL DEMANDED |

## **COMPLAINT**

Plaintiff Thembi Dlamini, for her Complaint against Defendants Juna G. Babb ("Ms. Babb") and Michael J. Babb ("Mr. Babb") (collectively, "Defendants"), respectfully shows the Court as follows:

## **PRELIMINARY STATEMENT**

1.    This is an action concerning human trafficking and forced labor, among other offenses, in violation of the Trafficking Victims Protection Reauthorization Act of 2008, 18 U.S.C. §§ 1583, 1584, 1589, 1590, and 1592, and the Thirteenth Amendment of the United States Constitution.

2.    Defendants lured Plaintiff to the United States from her native Swaziland, promising a two-week employment opportunity to assist Defendants in

preparation for a wedding.  Defendants promised Plaintiff that she would be permitted to return home to Swaziland after the two-week period; promised to pay for Plaintiff's airfare to and from the United States as partial consideration for her services; promised to pay Plaintiff the value of her services; and promised to provide Plaintiff with reasonable working and living conditions during the term of her employment.

3.     When Plaintiff arrived in the United States, she discovered a much different set of circumstances than she was promised.  Upon her arrival, Ms. Babb confiscated Plaintiff's passport, money, and return airplane ticket.  Defendants thereafter proceeded to control and manipulate Plaintiff through fear of her surroundings and threats of arrest and imprisonment.

4.     Rather than permit Plaintiff to return to Swaziland after two weeks, Defendants subjected Plaintiff to almost two years of captivity, holding Plaintiff as a virtual prisoner in their home and forcing her to work not only in their home, but in other persons' homes and for Mr. Babb's private construction company, all to Defendants' personal profit.  Defendants required Plaintiff to work seven days per work, with little to no breaks, and for essentially no pay.

5.     Only through fortunate circumstances was Plaintiff eventually able to escape from Defendants.

6.      In late 2007, the U.S. Federal Bureau of Investigation ("FBI") and the U.S. Immigration and Customs Enforcement ("ICE") initiated a criminal investigation into Defendants' suspected trafficking of Plaintiff.  A federal grand jury issued a criminal indictment against Defendants, which was filed on December 2, 2009.  *See United States v. Juna Gwendolyn Babb and Michael J. Babb*, No. 1:09CR0520-JEC-RGV (N.D. Ga.), Dkt. No. 1.

7.      Confronted with the evidence against them, Defendants executed plea agreements with the United States on July 8, 2011.  Ms. Babb pled guilty to one count of harboring aliens for commercial and private gain and was sentenced by this Court to serve 24-months in federal prison.  This sentence began on April 12, 2012.  Mr. Babb pled guilty to one count of misprision of a felony for concealing the felony committed by Ms. Babb.  Mr. Babb was sentenced by this Court to serve six-months in federal prison, which such sentence began on April 4, 2012 and concluded on or about October 2, 2012.

8.      In addition, Defendants were ordered to pay $25,000 in restitution to Plaintiff.  As of the date of this Complaint, however, Plaintiff only has received a small fraction of the restitution amount awarded by this Court.  In any event, the restitution award falls far short of the damages incurred by Plaintiff as a result Defendants' conduct.

- 3 -

9.     Accordingly, Plaintiff files this lawsuit, seeking damages for having been trafficked into the United States for forced labor and for additional unpaid wages.

## PARTIES, JURISDICTION, AND VENUE

10.     Plaintiff is a 37-year old citizen of Mbabane, Swaziland.  She currently resides in Decatur, Georgia, under a "T Visa," which is a type of visa reserved for victims of human trafficking.  Plaintiff's application for a permanent T-Visa was approved on October 12, 2012.

11.     Defendant Juna G. Babb is a citizen of Georgia.  At all times relevant to this Complaint, Ms. Babb resided in Ellenwood, Georgia, with her husband, Defendant Michael J. Babb.  Upon information and belief, Ms. Babb (Inmate No. 61545-019) currently is an inmate at the Federal Correctional Institution ("FCI") in Marianna, Florida, wherein she is serving a 24-month sentence for actions upon which this Complaint is based.  Upon information and belief, Ms. Babb's projected release date from federal custody is January 6, 2014.

12.     Defendant Michael J. Babb is a citizen of Georgia.  At all times relevant to this Complaint, Mr. Babb resided in Ellenwood, Georgia, with his wife, Ms. Babb.  Upon information and belief, Mr. Babb was an inmate (Inmate No. 61546-019) at McRae Correctional Institution in McRae, Georgia, wherein he

served a 6-month sentence for actions upon which this Complaint is based. Upon information and belief, Mr. Babb was released from federal custody on October 2, 2012. Upon information and belief, Mr. Babb currently resides in McDonough, Georgia.

13.     This Court has personal jurisdiction over Defendants, and venue is proper in this Court pursuant to 28 U.S.C. § 1391, because Defendants reside in this district. *See Urban Indus., Inc. of Ky. v. Thevis*, 670 F.2d 981, 986 (11th Cir. 1982) (finding that prisoner retained his Georgia residence even though incarcerated in Indiana); *Simbaqueba v. U.S. Dep't of Defense*, No. CV 309-066, 2010 WL 2990042, at *3 (S.D. Ga. May 28, 2010) ("a prisoner's place of incarceration is not considered his residence for purposes of venue") (citations omitted). In any event, a substantial part of the events or omissions giving rise to this Complaint occurred in this district.

14.     This Court has subject matter jurisdiction over this action under 28 U.S.C. 1331 and 18 U.S.C. § 1595.

# FACTUAL BACKGROUND

## A.    Plaintiff is Convinced to Come to the United States to Work for Defendants

15.    Plaintiff is an experienced cook, having worked as a cook for a family in Mbabane and then later for the United States Embassy in Swaziland.  In April 2005, Plaintiff was planning to start her own catering company in Mbabane.

16.    In or about April 2005, Plaintiff was informed that Defendants were ministers of a church in the United States and were interested in hiring an African woman to come to the United States to cook for their son's upcoming wedding.  A mutual acquaintance set up a meeting between Plaintiff and Ms. Babb in April 2005 while Ms. Babb was in Swaziland so that Ms. Babb could introduce herself to Plaintiff.

17.    Plaintiff met Ms. Babb at a hotel in Swaziland.  At this meeting, Ms. Babb told Plaintiff that she was looking to hire someone to help with her son's wedding.  Ms. Babb told Plaintiff that Defendants were looking to provide African people with positive opportunities and that it would be an especially good opportunity for Plaintiff to come to the United States to work for Defendants, because she could earn money to provide to her family.  Ms. Babb told Plaintiff that, if she agreed to work for Defendants, they would purchase Plaintiff's roundtrip airfare to the United States and would compensate her for the value of

her services.  Ms. Babb reiterated to Plaintiff that the job opportunity was for two weeks and that Plaintiff would return home to Swaziland at the conclusion of the two-week period.

18.     Plaintiff contemplated Defendants' offer.  Plaintiff had never been on an airplane before and was scared of the idea of traveling to the United States, and was reluctant to accept Defendants' offer.

19.     Ms. Babb called Plaintiff within a few days of their meeting.  Ms. Babb said she understood Plaintiff's reluctance and reassured her that she only intended for Plaintiff to come to the United States for two weeks to help with the upcoming wedding.  Relying on Ms. Babb's assurances, and believing that she would be able to earn money to help her family, Plaintiff accepted Defendants' offer.

20.     Upon Plaintiff's acceptance of Defendants' offer, Ms. Babb stated that she would help Plaintiff obtain a passport and visa and complete all other necessary immigration paperwork.  Ms. Babb provided Plaintiff with a letter to give to the Swaziland passport office, money to obtain a visa, and instructions for the visa application and consular approval process.

21.     With this assistance, Plaintiff obtained the necessary paperwork to travel to the United States from Swaziland.  Shortly thereafter, Ms. Babb arranged

the delivery of a roundtrip airplane ticket to Plaintiff for travel to and from the United States.

**B.    Plaintiff is Held Captive in the United States Upon Her Arrival**

22.    On June 12, 2005, Plaintiff boarded a flight from Johannesburg, South Africa, and arrived at Hartsfield-Jackson Atlanta International Airport the next day.

23.    Ms. Babb met Plaintiff at the airport and drove her to Defendants' home in Ellenwood, Georgia.

24.    Before arriving at Defendants' home, Ms. Babb instructed Plaintiff to surrender her passport and return airplane ticket, and Plaintiff complied.

25.    After arriving at Defendants' home, Ms. Babb showed Plaintiff the basement of Defendants' home, where Plaintiff would be staying.  Ms. Babb told Plaintiff that the area surrounding the house was dangerous and instructed Plaintiff never to leave the home.  Plaintiff then was left alone in the basement.

26.    The next day, Ms. Babb forced Plaintiff to take care of Defendants' grandson.  Plaintiff continued to provide domestic services for the next two weeks, even when Defendants left the home to travel.

**C.     Plaintiff Learns of Defendants' Deception**

27.     When Defendants returned home from their travels, and with Plaintiff's intended departure date back to her home country looming, Plaintiff inquired about the wedding for which she had come to work.  Ms. Babb informed Plaintiff that there was no wedding, and Plaintiff was to take care of Defendants' home and grandson.

28.     When Plaintiff asked Ms. Babb why she had deceived her, Ms. Babb responded that she knew that Plaintiff would not have come to the United States if Plaintiff knew the truth.  Indeed, Plaintiff would not have come to the United States had she known Defendants' true intentions.

29.     Plaintiff asked Ms. Babb for her passport and return airplane ticket so that she could leave.  Ms. Babb refused to provide Plaintiff with the documents and informed Plaintiff that she would have to purchase a return airplane ticket on her own if she wanted to leave.

30.     Ms. Babb made further threats to Plaintiff, informing Plaintiff that she illegally was in the United States without a work permit and could not contact the police without risking deportation and that she could not try to call her family or friends, because the police would monitor the calls and arrest her.

31.     Due to Defendants' threats and deception, Plaintiff believed she had no other option but to try to earn money to purchase her return ticket to her home country by working for Defendants.

**D.     Defendants Force Plaintiff to Work for their Personal Gain**

32.     In addition to forcing Plaintiff to take care of their grandson every day, Defendants ordered Plaintiff to clean their home, cook their meals, and perform outdoor manual labor at their home, including digging soil, pulling weeds, and planting vegetables and flowers.

33.     Defendants also forced Plaintiff to clean the homes of others.

34.     Additionally, Defendants forced Plaintiff to perform construction work for a company owned or operated by Mr. Babb.  This work included cleaning, removing and installing carpet, removing and installing tiles, painting, and moving furniture and other heavy objects.

35.     For her work, Plaintiff received little or no pay from Defendants, even though Defendants themselves often received money for Plaintiff's services.  While Defendants claimed Plaintiff was being paid for her work, they also claimed they needed to keep such payments to ensure their safekeeping and thus did not provide any of the money Plaintiff had earned to Plaintiff.  At other times, Defendants

claimed they were deducting money Plaintiff had earned to pay for her food and other costs associated with her work.

36.    Defendants' conduct continued for almost two years.  Typically, Plaintiff would wake up each day around 5:00 a.m., clean Defendants' home, cook Defendants' breakfast, and depart with Mr. Babb or Ms. Babb for work outside their home.  Once she returned to Defendants' home, Plaintiff would prepare dinner and continue cleaning the house or washing laundry.

37.    Plaintiff was provided little or no breaks during her workday, was not provided time-off for vacation, and otherwise was not provided reasonable working conditions.

**E.    Plaintiff Escapes Defendants' Custody**

38.    In early 2007, a couple for whom Plaintiff had worked approached Plaintiff, asking Plaintiff about why she was reluctant to speak to them.  Plaintiff then informed this couple about her desire to return home and how Defendants had been treating her.

39.    The couple was shocked to learn of Defendants' conduct and began to formulate a plan to extricate Plaintiff from Defendants' home.  Ultimately, this couple arranged for Plaintiff to escape Defendants' custody on or about February 7, 2007, when Defendants were away from their home.

40.     After her escape, Plaintiff worked with the FBI and the ICE, which began investigating Defendants' actions relative to Plaintiff.

**G.     Defendants are Indicted and Ultimately Sentenced for Trafficking**

41.     On October 9, 2007, as a result of their investigation, the FBI and ICE arranged for Plaintiff to testify before a grand jury of this Court.

42.     On December 2, 2009, the federal government filed an indictment in this Court against Defendants, asserting claims under, *inter alia*, 18 U.S.C. § 1589, for forced labor, and 18 U.S.C. 1324(a)(1)(A)(iii), for harboring an alien for financial gain.  *See United States v. Juna Gwendolyn Babb and Michael J. Babb*, No. 1:09CR0520-JEC-RGV (N.D. Ga.), Dkt. No. 1, at 11-13.  The indictment also asserted a claim specifically against Ms. Babb under 18 U.S.C. § 1592(a)(1), for unlawful conduct with respect to documents in furtherance of forced labor.  *Id.* at 11-12.  In addition, the indictment asserted separate claims against Mr. Babb and Ms. Babb under 18 U.S.C. § 1001 for knowingly and willfully making false, fictitious and fraudulent statements and representations to the FBI.  *Id.* at 12-13.

43.     On July 8, 2011, as the parties were preparing for trial, Defendants reached separate plea agreements with the United States.

44.     Specifically, Ms. Babb pled guilty to harboring aliens for commercial and private gain, in exchange for the government dismissing all remaining claims.

She was sentenced on October 6, 2011, to be imprisoned for a term of twenty-four (24) months with supervised release for a term of three (3) years upon her release from imprisonment.  Ms. Babb also was ordered to make restitution to Plaintiff, jointly and severally with Mr. Babb, in the amount of $25,000.

45.     Mr. Babb pled guilty to misprision of a felony, harboring aliens for commercial and private gain, in exchange for the government dismissing all remaining claims.  He was sentenced on October 6, 2011, to be imprisoned for a term of six (6) months with supervised release for a term of one (1) year upon his release from imprisonment.  Mr. Babb also was ordered to make restitution to Plaintiff, jointly and severally with Ms. Babb, in the amount of $25,000.

46.     Upon information and belief, Ms. Babb began serving her sentence of imprisonment on April 12, 2012, at Federal Prison Camp, FCI Marianna, in Marianna, Florida.  Upon information and belief, Mr. Babb began serving his sentence of imprisonment on April 4, 2012, at CI McRae, Correctional Institution, in McRae, Georgia.  Mr. Babb completed his sentence on or about October 2, 2012.

47.     To date, Plaintiff has received only a small fraction of the restitution amount awarded by the Court in the underlying criminal action.

## GOVERNING CIVIL REMEDY STATUTE

48.    18 U.S.C. § 1595(a) provides that "[a]n individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys [sic] fees."

## CLAIMS FOR RELIEF

### Count One:
### Enticement into Slavery (18 U.S.C. §§ 1583 & 1595)
### (Against Ms. Babb)

49.    Plaintiff incorporates by reference, as if fully set forth herein, the allegations contained in Paragraphs 1 through 48 of this Complaint.

50.    18 U.S.C. §§ 1583 and 1595 impose civil liability on any person who entices, persuades, or induces any other person to board any vessel with the intent that he or she may be made or held as a slave, or set out of the country to be so made or held.

51.    Ms. Babb enticed, induced, and persuaded Plaintiff to travel to the United States from her native Swaziland with false promises that she would be working for only two weeks in preparation for a wedding and thereafter could

return home.  Ms. Babb further promised to pay for Plaintiff's airfare to and from the United States and to pay Plaintiff for the services she rendered.

52.     Ms. Babb's representations were untrue and meant solely to induce Plaintiff into slave-like conditions in the United States, where Plaintiff was forced to work seven days per week for almost two years, with little or no breaks and essentially no pay.

53.     As a result of Ms. Babb's conduct, Plaintiff suffered damages. Pursuant to 18 U.S.C. § 1595, Plaintiff is entitled to recover damages and reasonable attorneys' fees for Ms. Babb's wrongful conduct.  Because of the malicious and wantonly abusive nature of Ms. Babb's conduct, Plaintiff also is entitled to an award of punitive damages.

**Count Two:**
**Involuntary Servitude (18 U.S.C. §§ 1584 & 1595, and**
**Thirteenth Amendment of the United States Constitution)**
**(Against All Defendants)**

54.     Plaintiff incorporates by reference, as if fully set forth herein, the allegations contained in Paragraphs 1 through 48 of this Complaint.

55.     The Thirteenth Amendment of the United States Constitution and its enforcing statute, 18 U.S.C. § 1584, prohibit involuntary servitude in private conduct.

56.     Defendants knowingly and willfully forced Plaintiff to work in a condition of involuntary servitude through fear, legal coercion, and verbal threats directed at Plaintiff.

57.     As a result of Defendants' conduct, Plaintiff suffered damages. Pursuant to 18 U.S.C. § 1595, Plaintiff is entitled to recover damages and reasonable attorneys' fees for Defendants' wrongful conduct.  Because of the malicious and wantonly abusive nature of Defendants' conduct, Plaintiff also is entitled to an award of punitive damages.

**Count Three:**
**Forced Labor (18 U.S.C. §§ 1589 & 1595)**
**(Against All Defendants)**

58.     Plaintiff incorporates by reference, as if fully set forth herein, the allegations contained in Paragraphs 1 through 48 of this Complaint.

59.     18 U.S.C. §§ 1589(a) and 1595 impose civil liability on any person who knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means:  (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person; (2) by means of serious harm or threats of serious harm to that person or another person; (3) by means of the abuse or threatened abuse of law or legal process; or (4) by means of any scheme, plan, or pattern intended to cause the

person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint.

60.     18 U.S.C. §§ 1589(b) and 1595 imposes civil liability on any person who knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a), knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such means.

61.     18 U.S.C. §§ 1589(c)( 1) defines the term "abuse or threatened abuse of law or legal process" to mean "the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action."

62.     18 U.S.C. §§ 1589(c)(2) defines the term "serious harm" to mean "any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the

same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm."

63.    As described above, Defendants induced Plaintiff into forced labor by means proscribed in Section 1589(a).  Defendants also knowingly benefitted, financially or by receiving something of value, from participation in a venture that engaged in the providing or obtaining of labor or services by means described in Section 1589(a).  As a result, Plaintiff was compelled to continue laboring for them under inhuman conditions and suffered damages.

64.    Pursuant to 18 U.S.C. § 1595, Plaintiff is entitled to recover damages and reasonable attorneys' fees for Defendants' wrongful conduct.  Because of the malicious and wantonly abusive nature of Defendants' conduct, Plaintiff also is entitled to an award of punitive damages.

## Count Four:
### Trafficking with respect to Peonage, Slavery, Involuntary Servitude, or Forced Labor (18 U.S.C. §§ 1590 & 1595) (Against All Defendants)

65.    Plaintiff incorporates by reference, as if fully set forth herein, the allegations contained in Paragraphs 1 through 48 of this Complaint.

66.    18 U.S.C. §§ 1590 and 1595 impose civil liability on any person who knowingly recruits, harbors, transports, provides, or obtains by any means, any

person for labor or services in violation of the Trafficking Victims Protection Reauthorization Act.

67.     As described above, Defendants knowingly recruited, harbored, and transported Plaintiff to obtain labor and services of Plaintiff in violation of the Trafficking Victims Protection Reauthorization Act.

68.     As a result of Defendants' conduct, Plaintiff suffered damages. Pursuant to 18 U.S.C. § 1595, Plaintiff is entitled to recover damages and reasonable attorneys' fees for Defendants' wrongful conduct.  Because of the malicious and wantonly abusive nature of Defendants' conduct, Plaintiff also is entitled to an award of punitive damages.

### Count Five:
**Unlawful Conduct with respect to Documents in Furtherance of Trafficking, Peonage, Slavery, Involuntary Servitude, or Forced Labor (18 U.S.C. §§ 1592 & 1595) (Against Ms. Babb)**

69.     Plaintiff incorporates by reference, as if fully set forth herein, the allegations contained in Paragraphs 1 through 48 of this Complaint.

70.     18 U.S.C. §§ 1592 and 1595 impose civil liability on any person who knowingly destroys, conceals, removes, confiscates, or possesses any actual or purported passport or other immigration document, or any other actual or purported government identification document, of another person, (i) in the course

- 19 -

of a violation of the Trafficking Victims Protection Reauthorization Act, (ii) with the intent to violate the Trafficking Victims Protection Reauthorization Act, or (iii) to prevent or restrict or to attempt to prevent or restrict, without lawful activity, the person's liberty to move or travel, in order to maintain the labor or services of that person, when the person is or has been victim of a severe form of trafficking in persons.

71.     As described above, Ms. Babb confiscated and concealed Plaintiff's passport and certain other immigration documents in the course of a violation of the Trafficking Victims Protection Reauthorization Act, with the intent to violate the Act, and to prevent Plaintiff's liberty to move or travel, in order to maintain Plaintiff's labor and services.   Plaintiff has been victim of a severe form of trafficking in persons.

72.     As a result of Ms. Babb's conduct, Plaintiff suffered damages. Pursuant to 18 U.S.C. § 1595, Plaintiff is entitled to recover damages and reasonable attorneys' fees for Ms. Babb's wrongful conduct.  Because of the malicious and wantonly abusive nature of Ms. Babb's conduct, Plaintiff also is entitled to an award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief against Defendants

Juna G. Babb and Michael J. Babb:

(a)     For an award of money damages for each Claim for Relief;

(b)     For an award of Plaintiff's reasonable attorneys' fees and costs;

(c)     For an award of punitive damages;

(d)     For an award of prejudgment interest; and

(e)     For such other and further relief as this Court deems just and

proper.

Respectfully submitted this 13th day of August, 2013.

|  |  |
|---|---|
| | /s/ Audra A. Dial |
| **KILPATRICK TOWNSEND &** | Audra A. Dial |
| **STOCKTON LLP** | Georgia Bar No. 220298 |
| 1100 Peachtree Street, Suite 2800 | Aaron J. Ross |
| Atlanta, Georgia 30309-4528 | Georgia Bar No. 461981 |
| Telephone: (404) 815-6500 | adial@kilpatricktownsend.com |
| Facsimile: (404) 815-6555 | aross@kilpatricktownsend.com |

*Counsel for Plaintiff*