IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| THEMBI DLAMINI<br><br>Plaintiff,<br><br>v.<br><br>JUNA G. BABB and MICHAEL J. BABB,<br><br>Defendants. | Civil Action File No.<br>1:13-cv-02699-WSD |

**PLAINTIFF STATEMENT OF UNDISPUTED MATERIALS FACTS IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Thembi Dlamini ("Plaintiff") respectfully submits the following Statement of Undisputed Material Facts in support of her Motion for Summary Judgment:

1. Plaintiff is a citizen of Mbabane, Swaziland. Declaration of Thembi Dlamini ("Dlamini Decl.") (attached to Plaintiff's Motion for Summary Judgment, filed concurrently herewith) ¶ 2.

2. Plaintiff currently resides in Decatur, Georgia under a "T" visa, which is a type of visa reserved for victims of human trafficking. Dlamini Dec. ¶ 3.

3. In April 2005, Plaintiff was residing in Mbabane, Swaziland when she learned that Juna G. Babb and Michael J. Babb ("Defendants") were ministers of a

church in the United States and were interested in hiring an African woman to come to the United States to cook for their son's upcoming wedding. Dlamini Decl. ¶ 4.

4. In or about April 2005, a mutual acquaintance set up a meeting between Plaintiff and Ms. Babb in Mbabane, Swaziland. Dlamini Decl. ¶ 5; *see also* Def. Juna G. Babb's Ans. to the Compl. ("J. Babb Ans.") (Doc. 17) ¶ 16.

5. Plaintiff and Ms. Babb met at a hotel in Swaziland. Dlamini Decl. ¶ 6; J. Babb Ans. ¶ 17.

6. At the meeting, Ms. Babb told Plaintiff that she was looking to hire someone to help with her son's wedding. Dlamini Decl. ¶ 6.

7. Ms. Babb told Plaintiff that she and her husband were looking to provide African people with positive opportunities and that it would be an especially good opportunity for Plaintiff to come to the United States to work for them, because she could earn money to provide to her family. Dlamini Decl. ¶ 7.

8. Ms. Babb told Plaintiff that if she agreed to work for Defendants, they would purchase Plaintiff's roundtrip airfare to the United States and would compensate her for the value of her services. Dlamini Decl. ¶ 8; *see also* J. Babb Ans. ¶¶ 17, 21 (admitting that Ms. Babb "purchased Plaintiff's plane ticket" and "arranged for Plaintiff's plane ticket").

9. Ms. Babb also told Plaintiff that the job opportunity was for two weeks and that she would be able to return home to Swaziland at the conclusion of the two-week period. Dlamini Decl. ¶ 9.

10. Plaintiff was reluctant to accept Ms. Babb's offer, because she had never been on an airplane before and the idea of traveling to the United States scared her. Dlamini Decl. ¶ 10.

11. Within a few days of the meeting between Ms. Babb and Plaintiff, Ms. Babb called Plaintiff and reassured her that she only intended for Plaintiff to come to the United States for two weeks to help with the upcoming wedding. Dlamini Decl. ¶ 11; *see also* J. Babb Ans. ¶ 19 (admitting that Ms. Babb "did accept Plaintiff's collect calls and spoke with Plaintiff on several occasions").

12. Relying on Ms. Babb's assurances, and believing that she would be able to earn money to help her family, Plaintiff accepted Ms. Babb's offer to come to the United States to assist with Ms. Babb's son's wedding. Dlamini Decl. ¶ 12.

13. After Plaintiff informed Ms. Babb that she would accept her offer, Ms. Babb helped Plaintiff obtain a passport and visa and complete all other necessary immigration paperwork. Among other things, Ms. Babb provided Plaintiff with a letter to give to the Swaziland passport office, money to obtain a visa, and instructions for the visa application and consular approval process.

Dlamini Decl. ¶ 13; *see also* J. Babb Ans. ¶ 20 (admitting that Ms. Babb "gave Plaintiff a letter to give to the Swaziland passport office").

14. With Ms. Babb's assistance, Plaintiff obtained the necessary paperwork to travel to the United States from Swaziland. Dlamini Decl. ¶ 14; *see also* J. Babb Ans. ¶ 20.

15. Shortly thereafter, Ms. Babb arranged for the delivery of a roundtrip airplane ticket to Plaintiff for travel to and from the United States. Dlamini Decl. ¶ 15; *see also* J. Babb Ans. ¶¶ 17, 21.

16. On June 12, 2005, Plaintiff boarded a flight from Johannesburg, South Africa and arrived at Hartsfield-Jackson Atlanta International Airport the next day. Dlamini Decl. ¶ 16; J. Babb Ans. ¶ 22 (admitting the same).

17. Ms. Babb met Plaintiff at the airport and drove her to Defendants' home in Ellenwood, Georgia. Dlamini Decl. ¶ 17; J. Babb Ans. ¶ 23 (admitting the same).

18. Before arriving at Defendants' home, Ms. Babb instructed Plaintiff to surrender her passport and return airplane ticket, which she did. Dlamini Decl. ¶ 18.

19. When Plaintiff arrived at Defendants' home, Ms. Babb showed Plaintiff the basement of her home and told Plaintiff that the basement was where she would be staying. Dlamini Decl. ¶ 19.

20. Ms. Babb also told Plaintiff that the area surrounding her house was dangerous and instructed her never to leave the home. She then left Plaintiff alone in the basement. Dlamini Decl. ¶ 19.

21. The next day, Ms. Babb forced Plaintiff to take care of Defendants' grandson. Dlamini Decl. ¶ 20.

22. For the two weeks that followed, Plaintiff continued to provide domestic services at Defendants' home, even when they left the home to travel. Dlamini Decl. ¶ 21.

23. Defendants returned home from their travels about two weeks after Plaintiff first arrived in the United States. Dlamini Decl. ¶ 22.

24. Upon Defendants' return home, Plaintiff asked Defendants about their son's wedding for which Plaintiff had come to work. Ms. Babb informed Plaintiff that there was no wedding and instructed Plaintiff to continue to take care of Defendants' home and grandson. Dlamini Decl. ¶ 22.

US2008 5535439 1

25. When Plaintiff asked Ms. Babb why she had deceived her, Ms. Babb responded that she knew that Plaintiff would not have come to the United States if she had known the truth. Dlamini Decl. ¶ 23.

26. Plaintiff would not have come to the United States had she known Defendants' true intentions. Dlamini Decl. ¶ 23.

27. Plaintiff asked Ms. Babb for her passport and return airplane ticket so that she could return to Swaziland, but Ms. Babb refused to provide Plaintiff with the documents and informed her that she would have to purchase a return airplane ticket on her own if she wanted to leave. Dlamini Decl. ¶ 24.

28. Ms. Babb made further threats to Plaintiff, telling her that she was in the United States illegally without a work permit and could not contact the police without risking deportation. Dlamini Decl. ¶ 25.

29. Ms. Babb also told Plaintiff that she could not call her family or friends because the police would monitor the calls and arrest her. Dlamini Decl. ¶ 25.

30. Due to Defendants' threats and deception, Plaintiff believed that she had no other option but to try to earn money to purchase her return ticket to Swaziland by working for Defendants. Dlamini Decl. ¶ 26.

US2008 5535439 1

31. In addition to forcing Plaintiff to take care of their grandson every day, Defendants ordered Plaintiff to clean their home, cook their meals, and perform outdoor manual labor at their home, including digging soil, pulling weeds, and planting vegetables and flowers.  Dlamini Decl. ¶ 27.

32. Defendants also forced Plaintiff to clean the homes of others and to perform construction work for a company owned or operated by Mr. Babb, including cleaning, removing and installing carpet, removing and installing tiles, painting, and moving furniture and other heavy objects.  Dlamini Decl. ¶ 28.

33. While Defendants claimed Plaintiff was being paid for her work for them, Defendants provided Plaintiff with little to no pay, even though they often received money for her services.  Dlamini Decl. ¶ 29.

34. On some occasions, Defendants claimed they needed to keep the money to ensure its safekeeping and did not provide any of the money Plaintiff had earned to Plaintiff.  Dlamini Decl. ¶ 29.

35. On other occasions, Defendants claimed they were deducting money earned by Plaintiff to pay for her food and other costs associated with her work.  Dlamini Decl. ¶ 29.

36. Defendants' conduct relative to Plaintiff continued for almost two years.  Dlamini Decl. ¶ 30.

37. On a typical day, Plaintiff would get up at around 5:00 a.m., clean Defendants' home, cook Defendants' breakfast, and depart with Mr. Babb or Ms. Babb for work outside their home. When Plaintiff returned to Defendants' home after work, she would prepare dinner and continue cleaning the house or washing laundry. During each day, she was provided with few or no breaks. She was not provided time-off for vacation and was not provided reasonable working conditions. Dlamini Decl. ¶ 31.

38. In early 2007, a couple for whom Plaintiff had worked approached Plaintiff and asked her why she was reluctant to speak to them. Plaintiff informed them about her desire to return home and how Defendants had been treating her. Dlamini Decl. ¶ 32.

39. The couple appeared shocked to learn of Defendants' conduct and began to formulate a plan to extricate Plaintiff from Defendants' home. Dlamini Decl. ¶ 33.

40. Ultimately, the couple arranged for Plaintiff to escape Defendants' custody on or about February 7, 2007, when Defendants were away from their home. Dlamini Decl. ¶ 33.

US2008 5535439 1

41. After Plaintiff's escape, Plaintiff worked with the Federal Bureau of Investigation ("FBI") and the U.S. Immigration and Customs Enforcement ("ICE"), which began investigating Defendants' actions.  Dlamini Decl. ¶ 34.

42. On December 2, 2009, the federal government filed an indictment in this Court against Defendants, asserting claims under, *inter alia*, 18 U.S.C. § 1589, for forced labor, and 18 U.S.C. § 1324(a)(1)(A)(iii), for harboring an alien for financial gain.  *United States v. Juna Gwendolyn Babb and Michael J. Babb*, No. 1:09CR0520-JEC-RGV (N.D. Ga.) (the "Criminal Action"), Doc. 1, at 11-13.[1]

43. The indictment in the Criminal Action also asserts a claim specifically against Ms. Babb under 18 U.S.C. §1592(a)(1) for unlawful conduct with respect to documents in furtherance of forced labor.  Criminal Action, Doc. 1, at 11-12.  In addition, the indictment asserted separate claims against Defendants under 18 U.S.C. § 1001 for knowingly and willfully making false, fictitious, and fraudulent statements and representations to the FBI.  *Id.* at 12-13.

---

[1] In accordance with settled Eleventh Circuit authority, the documents filed in the Criminal Action are subject to judicial notice by this Court.  *See, e.g., Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010) (holding that "[t]he district court properly took judicial notice of the documents in [plaintiff's] first case, which were public records that were 'not subject to reasonable dispute' because they were 'capable of accurate and ready determination by resort to resources whose accuracy could not reasonably be questioned'") (citing, *inter alia*, Fed. R. Evid. 201(b)); *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999).

44. On July 8, 2011, Defendants reached separate plea agreements with the United States with respect to the claims against them. Criminal Action, Doc. 135; *see also United States v. Michael J. Babb*, No. 1:11-cr-00340-JEC, Doc. 4. Ms. Babb plead guilty to harboring aliens for commercial and private gain, and Mr. Babb pled guilty to misprision of a felony, harboring aliens for commercial and private gain. *See id.* Both Defendants were sentenced to and served time in prison as a result of their crimes with respect to Plaintiff. *See id.* Both Defendants also were ordered to pay restitution to Plaintiff in the amount of $25,000. Criminal Action, Doc. 144; *United States v. Michael J. Babb*, No. 1:11-cr-00340-JEC, Doc. 9.

45. To date, Plaintiff has received only a small fraction of the restitution amount owed to her. Dlamini Decl. ¶ 36; Criminal Action, Doc. 147 (entered Mar. 10, 2014) (identifying failure by Ms. Babb to pay restitution as ordered).

Respectfully submitted this 14th day of April, 2014.

**KILPATRICK TOWNSEND & STOCKTON LLP**
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309-4528
Telephone: (404) 815-6500
Facsimile: (404) 815-6555

s/ Aaron J. Ross
Audra A. Dial
Georgia Bar No. 220298
Aaron J. Ross
Georgia Bar No. 461981
adial@kilpatricktownsend.com
aross@kilpatricktownsend.com

*Counsel for Plaintiff*

- 10 -

## CERTIFICATE OF SERVICE AND CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1

I hereby certify that I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system (which document was prepared in Times New Roman font, 14-point type, one of the font and point selections approved by the Court in N.D. Ga. L.R. 5.1(C)) and served a copy of the foregoing document upon Defendants (proceeding *pro se*) by depositing a true and correct copy thereof in the United States mail, first-class postage prepaid, addressed as follows:

>Juna G. Babb
>4262 Ivy Run
>Ellenwood, Georgia 30294-6522
>
>Michael J. Babb
>1335 Ethans Way
>McDonough, Georgia 30252

This 14th day of April, 2014.

>s/ Aaron J. Ross
>Aaron J. Ross (Ga. Bar No. 461981)
>**Kilpatrick Townsend & Stockton LLP**
>1100 Peachtree Street, Suite 2800
>Atlanta, Georgia 30309-4528
>Telephone: (404) 815-6500
>Facsimile: (404) 815-6555
>aross@kilpatricktownsend.com
>
>*One of the Attorneys for Plaintiff*