```
                IN THE UNITED STATES DISTRICT COURT
               FOR THE NORTHERN DISTRICT OF GEORGIA
                         ATLANTA DIVISION

THEMBI DLAMINI                         )
                                       )
           Plaintiff,                  )   CIVIL ACTION FILE
                                       )   NO. 1:13-CV-2699-WSD
v.                                     )
                                       )   ATLANTA, GEORGIA
JUNA G. BABB and                       )
MICHAEL J. BABB                        )
                                       )
           Defendants.                 )
_____)
```

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE WILLIAM S. DUFFEY, JR.,
UNITED STATES DISTRICT JUDGE

**Pretrial Conference**
Wednesday, April 22, 2015

APPEARANCES OF COUNSEL:

For the Plaintiff:         KILPATRICK TOWNSEND & STOCKTON
                           (By:  Audra Ann Dial
                                 George L. Murphy, Jr.
                                 William D. Meyer)

For the Defendant:         Michael J. Babb, *Pro Se*

*Proceedings recorded by mechanical stenography
and computer-aided transcript produced by*
NICHOLAS A. MARRONE, RMR, CRR
1714 U. S. Courthouse
75 Spring Street, S.W.
Atlanta, GA  30303
(404) 215-1486

```
 1                    Wednesday Morning Session
 2                       April 22, 2015
 3                          9:36 a.m.
 4                         -- -- --
 5                    P R O C E E D I N G S
 6                         -- -- --
 7           (In open court:)
 8           THE COURT:  Good morning.  This is the pretrial
 9   conference in Dlamini versus Babb, which is Civil Action
10   No. 13-2699.
11           Would counsel announce their appearances, please?
12           MS. DIAL:  Good morning, Your Honor.  Audra Dial,
13   George Murphy and Bill Meyer on behalf of the plaintiff,
14   Thembi Dlamini.
15           THE COURT:  Good morning.
16           And I take it you are Mr. Babb?
17           MR. BABB:  Yes.
18           THE COURT:  And I understand that you are not
19   represented by counsel.  Is that correct?
20           MR. BABB:  No.
21           THE COURT:  And your wife is Juna Babb; is that
22   right?
23           MR. BABB:  Yes.  We are divorced at this point.
24           THE COURT:  You are divorced?
25           MR. BABB:  Yes.
```

```
1          THE COURT:  But she is not here.  She has been
2    given notice of the pretrial conference and has not
3    participated either previously in the case nor is she here
4    today.  So the record should show that.
5          So the purpose of the pretrial conference is to
6    prepare for the trial that will begin on Monday.  In
7    preparing for this today, the first thing I noticed is that
8    there hasn't been any real briefing on the issue of punitive
9    damages.
10         There is an unreported decision that apparently was
11   finally mentioned at the end of the request to charge that
12   was submitted by the plaintiffs and then there is one
13   reported decision out of the Ninth Circuit.
14         So if you are going to seek punitive damages,
15   I would like for that to be briefed and submitted to the
16   Court by 5:00 tomorrow.
17         MS. DIAL:  Yes, Your Honor.
18         THE COURT:  There is also a need in this case,
19   Mr. Babb, because you haven't appeared and you haven't
20   answered the complaint, you have already been found liable
21   for violation of the statute, and the question and the issue
22   next week will be what damages, if any, will be awarded
23   against you.  Are you aware of that?
24         MR. BABB:  Repeat that again, sir.
25         THE COURT:  You did not file an answer in this
```

```
 1  case.  Do you understand that?
 2          MR. BABB:  Yeah.
 3          THE COURT:  So when you got the complaint you
 4  didn't do anything to respond to that?
 5          And you got the complaint, didn't you?
 6          MR. BABB:  Yes.
 7          THE COURT:  All right.  And you decided not to
 8  respond to it because you --
 9          MR. BABB:  I needed help in even reading this
10  stuff, sir.
11          THE COURT:  So because of that, you did not file an
12  answer to the complaint; correct?
13          As a result of that, you have been found in
14  default because a complaint requires an answer, which means
15  that you have been determined to be liable for a violation
16  and the civil remedies provided for under 18 U.S.C. Section
17  1595.
18          So the trial on Monday is not whether or not you
19  are responsible or did not engage in the conduct; you have
20  already been held liable for engaging in the conduct.  The
21  question is how much money, if anything, will be awarded to
22  the plaintiff for which you will be responsible.  So it's
23  limited to that issue.
24          And because of that, at some point I will have to
25  tell the jury that you have been found liable for your
```

conduct and that the issue will only be on damages.

So you will see that I have given to you a copy of the preliminary instructions that I will give to the jury -- that should have been given to you already -- and that there is a section in the preliminary instructions where I summarize the case and I state the limitation of the issues to be tried.

I need everybody to look at that, and if they have any responses or comments on it, those are due by 5:00 tomorrow.

So let's -- well, there is also a summary of the case. When I conduct *voir dire*, I have to tell them generally what the case is about so that I see whether or not anybody knows anything about the case.

That's been provided to you. If you want to comment on the summary that I have prepared, that's due by 5:00 tomorrow.

Now let's talk about the process.

The panel members will be brought in, and they will be seated according to the order in which they appear on the printout that comes from the jury office. They will be seated in the back of the courtroom on the right-hand side in the spectator area.

The first bench will accommodate eight people. The next benches will accommodate six. Everybody will be seated

1  on the right-hand side of the gallery as you look in the rear
2  towards it.
3       *Voir dire* consists of three sections.  The first
4  are the qualifying questions, which I will ask them, which
5  are generally addressed to whether or not anybody is legally
6  disqualified from sitting.
7       I have given you the qualifying questions.  Please
8  review those.  If you have any comments on those, those are
9  also due by 5:00 tomorrow.
10      Following that, we ask each juror to provide
11 background information.  Those are in the background
12 questions.  Those have been provided to you.  This is the
13 standard questions I allow to be asked.
14      If you want to comment on those or add questions,
15 you may do so, but you need to give me your comments or any
16 additions that you seek by 5:00 tomorrow.
17      As I say, you have a summary of the case that I
18 intend to use when I ask them if they know anything about
19 it.
20      And then finally each party is entitled to ask
21 *voir dire* questions themselves.
22      Those were required by order to be submitted to me
23 before today.  Mr. Babb, you didn't submit any, so you will
24 not be allowed to ask any.
25      I have reviewed the plaintiff's *voir dire,* and

1  actually I'm not going to allow them to ask almost all of
2  their questions because I find that they are objectionable,
3  but I will tell you which ones may be asked.
4          So let's move to those right now.  These are
5  Attachment B-1 to the pretrial order.
6          There are four initial unnumbered questions, one
7  through four, those are allowed.
8          Questions five, six, seven, eight and nine violate
9  what I believe are a format of questions in which you
10 basically ask questions based upon your theory of the case.
11 And so you may not ask five, six, seven, eight or nine.
12         You may ask ten and eleven, but I want them to be
13 reframed because I think they are in a form that makes it --
14 you are not asking for a fair and objective response; it
15 looks as if you are directing them to a response.
16         But the general subject matter is fine, but you
17 should ask them in the following format.
18         Ten may be asked in this format:  Is there any
19 member of the panel who has any view regarding immigrants to
20 the United States that might affect their ability to serve as
21 a fair and impartial juror in this case?
22         Eleven may be asked in a different way.  It's
23 actually technically incorrect.  If you have overstayed your
24 visa, you are here without authority, you are not here,
25 quote, illegally, closed quote.  In fact, most of the time

1   you are here illegally, but I understand what you were trying
2   to do.
3           But you may ask the question in this way:  Is there
4   any member of the panel who has any negative view about
5   people who have overstayed their visa that might affect their
6   ability to be a fair and impartial juror in this case?
7           After *voir dire* is done, I know in this case I can
8   give them a break.  When I give them a break, I will ask them
9   to go out to the vestibule.  Then we will do for-cause and
10  peremptory challenges outside their presence.
11          The for-cause challenges, of course, will begin
12  with the parties telling me which people they think are not
13  allowed to serve as jurors in this case because they are
14  legally disqualified.  And after I rule on those, then we
15  will do peremptory challenges.
16          In this case you are each entitled to three
17  challenges, meaning that we will -- and since I intend to
18  seat eight jurors -- since we have to have at least six,
19  eight will give us a couple of people in the event that
20  something happens -- and because there are six challenges
21  total that you are entitled to, we will then assert
22  peremptory challenges with respect to the lowest fourteen
23  numbered panel members.
24          Let me tell you a little bit about challenges.
25  What will happen is after this process of getting information

1  from the jurors in *voir dire*, which I have just explained to
2  you, there will be more people than we need since we will
3  only have eight people on the jury.
4           And one of the processes, if there is somebody
5  who you believe is legally disqualified from serving as a
6  juror and if you think they are -- I know you don't know the
7  law on this because you are uncounseled, but if you think
8  they are, you can assert a challenge, and I will tell you
9  whether or not it's one that I would sustain and remove that
10 person.
11          But after we determine who is legally
12 disqualified -- and generally it's hard to show that
13 somebody is legally disqualified -- then you will have
14 three people according to the process I will explain in a
15 second that you can say I just don't want those, the people
16 you have told me about, to serve as jurors.
17          And assuming that they are not being -- you are not
18 asking for them to be removed for an improper means --
19 generally you can't ask somebody to be removed based upon
20 their race or gender or ethnicity or religion, but I will
21 know that probably -- then those people will not serve as
22 jurors and we will end up with eight.
23          So I will tell you ultimately who the fourteen
24 people are that you can exercise your three challenges
25 against, and then in a second I will tell you the process

1  for doing that.  But there are three people that you can
2  identify that you would not like to sit as jurors, and
3  generally those people then will not serve and we will end up
4  with -- and the remaining people then will serve as the jury
5  in this case.
6          The process for doing that is using a chart that
7  I use.
8          Do they have the chart, Harry?
9          THE CLERK:  Yes, sir.
10         THE COURT:  What will happen is we will use only
11 the left-hand column of the chart.  The plaintiffs will first
12 put a number on the first line of the person that they want
13 to challenge, and then they will write in "Plaintiff" so I
14 will know that the plaintiff challenged -- let's say they
15 challenged juror number four.
16         Then they will give the chart to you, and right
17 underneath where they entered their information you can put
18 the number of the person that you want to challenge
19 peremptorily -- and you will know who they are because you
20 will have a list of everybody that is on the panel -- and
21 then you will put "Defendant."  And then you will give it
22 back to them.
23         And we will do that three times, and then I will
24 know who has been challenged.  After we have done that, we
25 will then know who the jurors are.

1          I will give you a little bit of a break.  And then
2  we will bring the panel members back in.  I will tell the
3  jurors who it is that will serve as jurors in the case, we
4  will have them seated over in the jury box, and then we will
5  begin the trial.
6          So far any questions?
7          MS. DIAL:  No, Your Honor.
8          THE COURT:  I am going to give you, Mr. Babb,
9  because I suspect you don't have this, this is a recently
10 superseded copy of the rules that will apply for you.  Even
11 though you don't have a lawyer, you will be held responsible
12 for knowing these rules.
13         What I have done is I have tabbed the rules in that
14 portion of what we call the Federal Rules of Civil Procedure
15 that apply to this case that talk about trials, so I have put
16 "Trials" on that.  So you can turn to that page, and you need
17 to study up on those rules.
18         And then there are Rules of Evidence about what
19 can come in, what questions can be asked, what questions
20 can't be asked of witnesses, what evidence can or cannot be
21 admitted.  Those are under the Rules of Evidence, and I have
22 tabbed -- put "Evidence," there is a tab there identifying
23 where those rules are.
24         And I am going to give you this, which you may
25 keep.

1    So after the jury is seated, we begin with what we
2    call opening statements.  Each side will have fifteen minutes
3    to make an opening.  I would be surprised if it takes that
4    long.
5    You will see there are two clocks.  They are not
6    lit up.
7    Would you light those up, please, Harry?
8    The plaintiff's clock will be the one on the left,
9    and so it's your responsibility to keep track of that.  And
10   if you run over, like we had in the trial last week, I will
11   cut you off.
12   So it's your responsibility.  We have those up
13   there so you don't get cut off.  But you only have fifteen
14   minutes, so you need to conclude within that time.
15   Mr. Babb, yours is on the right.  So when you are
16   talking to the jury, you need to look at that clock and make
17   sure that you don't go beyond fifteen minutes.
18   Arguments, those opening statements, will be made
19   from the podium.  You may not move in front of the podium.
20   You have to stay at the podium.  You may, of course, look at
21   the jurors, but make sure that the microphone is pointed in
22   your direction.  But the statements have to be made from the
23   podium.
24   After opening statements are completed, we will
25   move right into the evidence.  First we start with the

1  plaintiff.  When the plaintiff is done, if you have evidence,
2  then you may present evidence.
3           Unusually in this case, some of the evidence that
4  can be presented probably is your own testimony, and I
5  will -- what you will have to do is if you decide that that's
6  the evidence that you want to put in, you will have to come
7  up and sit in the witness stand, you will be sworn in under
8  oath, meaning that if you don't tell the truth, you will be
9  subject to perjury.  You could be prosecuted for that or held
10 accountable for not telling the truth if you don't tell the
11 truth under oath.
12          But you need to think what you are going to say,
13 saying it clearly and succinctly.  If there is an objection
14 from the plaintiff that you are saying something that they
15 don't believe is admissible and if I sustain the objection,
16 then you can't talk about that anymore.  You will have to
17 stop.
18          When the defendants' case in chief or your case in
19 chief is over, then it's possible that I would allow the
20 plaintiff to put in rebuttal evidence, which is to respond to
21 things that you said.  But I can only decide once I see what
22 evidence you present whether or not any rebuttal evidence is
23 allowed.
24          After that is done, we will have a charge
25 conference, meaning we will be back in here -- probably back

1  in here -- in which there are certain principles of law that
2  the plaintiffs want me to instruct on.
3           If you wanted instructions on the law, you were
4  actually required to give those to me before today.  But
5  because you are *pro se,* I will give you until 5:00 tomorrow
6  to state the principles of law that you would like me to
7  instruct them on.  But they have to be in my possession by
8  5:00 tomorrow.
9           We will talk about my view of the law.  I have
10 looked at the request to charge already.  They suffer
11 somewhat from the same problem that the *voir dire* questions
12 did.  I probably will just rewrite those which I think will
13 cover those things which I think are proper to instruct the
14 jury on with respect to damages, including punitive damages
15 if I am convinced that our circuit would allow them.
16          And of course you can reconsider whether or not
17 you want to request them, because I think it might well be
18 an open issue, in which case there would be an appellate
19 issue in the case.
20          And if there is an appellate issue on that
21 issue, I might well find some way for the defendant to be
22 represented so that that's properly presented to the
23 circuit.  So if that guides your thinking on that at all.
24          The course of the trial has certain rules that
25 I enforce.  If there is anything that you expect to come up

1   that you think might be a question I will have to decide,
2   I would ask for you to please do that during a break or
3   before or after the trial day so that we don't do that in
4   front of the jury, and so when the jury is here that they are
5   doing their job, which is to hear evidence.
6           The trial days, on Monday everybody has to be here
7   at 9:15.  The panel members will probably be brought down
8   about 9:30, and we are going to begin promptly at 9:30.
9           I'm assuming that this will take two days.  Is
10  there anybody who believes it will take longer than that?
11          MS. DIAL:  No, Your Honor.
12          THE COURT:  Do you, Mr. Babb?
13          MR. BABB:  No.
14          THE COURT:  Okay.  And so the second day you need
15  to be here at 9:00.  And I suspect the second day we will
16  actually conclude all the evidence and begin the process to
17  submit the case to the jury for their decisions.
18          There are two breaks, a fifteen-minute break
19  midmorning and midafternoon, and a one-hour break for
20  lunch.  I keep to those times, and so when we take a
21  fifteen-minute break, it will actually be fifteen minutes,
22  doubtfully longer than that, unless something comes up that
23  I just can't get back in fifteen minutes.
24          I have given you my general instructions.  Those
25  are on the website, but we have also handed those out this

1   morning.  And as I say, the only thing that specifically will
2   have to be addressed at the charge conference, while you can
3   comment on my general instruction, which I looked at as
4   recently as yesterday and am satisfied that it is still
5   current, that we will focus on at the charge conference just
6   what the damages instructions will be.
7            And I will prepare and have at the charge
8   conference a jury verdict form, but I haven't decided on that
9   yet.  But you will have that and know what I intend to give
10  to the jury for their use in recording their verdict in the
11  case.
12           We do have technology.  It's your responsibility
13  to know how to operate it.  If you want to do that, set
14  aside a time with Harry to go over what technology is
15  available, because that will be your responsibility and not
16  ours.
17           Witnesses, because Mr. Babb doesn't know about
18  sequestration, I'm just going to require all witnesses to be
19  sequestered, meaning that no witness can be in here when any
20  other witness is testifying unless and until they are
21  released, in which case they can after that.
22           There was a pretrial order that was submitted to
23  me.  Apparently the defendants chose not to participate in
24  submitting that and have not independently submitted their
25  part of the pretrial order, so I'm going to enter the

1  pretrial order as it was submitted to me by the plaintiff
2  reserving on whether or not punitive damages are allowable in
3  our circuit in a case like this.
4          So that's I think all I need to cover.  Is there
5  anything from the parties?  Any questions, comments,
6  anything you want to know about next week that we should
7  address now?
8          MR. MURPHY:  I think there is one issue that is a
9  little bit difficult even for lawyers, and I think to be fair
10 to Mr. Babb that maybe there should be some instruction from
11 the Court on the issue of where liability has already been
12 decided, then evidence bearing on the issue of liability is
13 not probative of any issue in the case.  And so --
14         THE COURT:  Well, it could be.  If you are seeking
15 punitive damages, it seems to me that with respect to whether
16 it was wanton, that you could talk about what went on and how
17 he went about doing that.
18         MR. MURPHY:  Well, he can talk about wanton and he
19 can talk about his financial circumstances, but on the issue
20 of it didn't happen, he didn't do it, didn't know what was
21 involved, those issues have been decided.
22         THE COURT:  Well, I think -- it's all going to
23 depend upon what he says, but I think that by seeking
24 especially punitive damages, that I have got to give him some
25 leeway to explain exactly what happened.

1          MR. MURPHY:  Well, let's just take --
2          THE COURT:  And I think with respect to whether or
3   not he believed that what he was doing is right or wrong, I
4   mean, he has been found liable, but if he says, Look, I
5   wasn't aware of that, that would go to the issue of punitive
6   damages.  Because how could you be wanton if you thought that
7   what you were doing was not illegal?
8          MR. MURPHY:  Well, he's also pled guilty to a
9   related crime.
10         THE COURT:  Well, I understand that.  But that's --
11         MR. MURPHY:  We will take it up on a case-by-case
12  basis.  But I just thought that it might be helpful to
13  Mr. Babb to have some understanding about that at the
14  outset.
15         THE COURT:  I just don't -- one, I don't know what
16  your plaintiff is going to say, and so I don't know what it
17  is that would be a response to that, nor do I know the way
18  the case has been presented.
19         Because as a *pro se,* I'm also not going to tell him
20  that he can't go into what you just said because I think
21  there are some things that he could well testify that would
22  be admissible.  So I don't know how to instruct him.
23         MR. MURPHY:  Okay.
24         THE COURT:  It's a *pro se* case.  This is about the
25  fourth *pro se* case I have had.  They are always hard.  And I

1  know my responsibility, and you can trust that I will fulfill
2  it.
3         MR. MURPHY:  Thank you, Your Honor.
4         THE COURT:  Anything else?
5         Anything else from you, Mr. Babb?
6         MR. BABB:  No, sir.
7         THE COURT:  All right.  We will see you Monday.
8         We will be in recess.
9              (Proceedings adjourn at 9:58 a.m.)

C E R T I F I C A T E

UNITED STATES OF AMERICA       :
                               :
NORTHERN DISTRICT OF GEORGIA   :

      I, Nicholas A. Marrone, RMR, CRR, Official Court Reporter of the United States District Court for the Northern District of Georgia, do hereby certify that the foregoing 20 pages constitute a true transcript of proceedings had before the said Court, held in the city of Atlanta, Georgia, in the matter therein stated.

      In testimony whereof, I hereunto set my hand on this, the 22nd day of April, 2015.


/s/ Nicholas A. Marrone
_____
NICHOLAS A. MARRONE, RMR, CRR
Registered Merit Reporter
Certified Realtime Reporter
Official Court Reporter
Northern District of Georgia